Case No. 18-1298 Baltimore Gas and Electric Company Petitioner v. Federal Energy Regulatory Commission Mr. Price for the petitioner, Mr. Fish for the respondent, Mr. Pearson for the intervener Mr. Price, let's let the courtroom clear. Good morning, Your Honor. May it please the Court, my name is Matthew Price on behalf of Baltimore Gas and Electric Company. When BGE filed its formula rate in 2005, it expressly told the Commission and the world that the rate filing did not deal with deferred tax amounts. You can see that on page 34 of the addendum to our brief. The Commission then set the formula rate for hearing and the filing was resolved in a settlement. And the settlement also expressly indicated that the deferred tax amounts were still on BGE's books but were not being dealt with in the settlement or recovered through the formula rate. And you can see that on pages 31, line 40 of the Joint Appendix and also pages 36-38 of the tax entries, indicating that those amounts are being excluded from the deferred tax amounts being recovered through the formula rate. So everyone knew that these amounts were still out there, like a trunk left up in the attic, and everyone was happy to leave them unresolved for the moment. And critically, the question is what is the consequence of leaving them unresolved for the moment? And as I understand it, your view of the matter is that leaving them unresolved for the moment enables BGE to collect them later at the end of the settlement, which does not seem to conform to the matching principle, which is really driving the whole thing. Well, two responses to that, Your Honor. The first is that I think it's critically important that everyone in the industry was doing the exact same thing. As FERC acknowledged in its recent notice of proposed rulemaking, it said that there was a near industry-wide gap in the transmission formula rates, and these amounts were simply not being recovered by utilities that had made the transition to formula rates. And when four different companies came to FERC and said they wanted to recover deferred taxes that had been built up and they wanted to recover these catch-up amounts that were three years old, four years old, and seven years old, FERC said okay and approved their recovery. And we're here because when BGE came to FERC and asked for the exact same treatment, FERC said no, but provided no escalation. Well, maybe it gagged at 12 years. I mean, I agree with your view, your implicit view that it was foolish of FERC to accept that even for, what was it, five years? Seven years was the worst. Seven years is the worst, I think, yeah. Well, I recognize there's maybe a difference between seven and 12 in the sense that 12 is greater than seven, but I think it's important to note that FERC's orders don't draw the line between seven and 12. They don't draw that line anywhere. They did note in your case that it was a longer period, which is indisputable. That is absolutely right, Your Honor, but they didn't make that the basis for denying our recovery, but also they didn't even give us seven. So FERC has never explained the difference between seven or 12 or explained where it would draw the line, and it hasn't disavowed the seven-year approval in the Duquesne case. It didn't allow us to recover up to seven, though. It gave us nothing at all. It's as though, you know, we came into FERC and said, and FERC said, well, we'll give you $50 if you had asked for $50, but because you asked for $100, we give you zero. And that's arbitrary and capricious, Your Honor. There's no rational basis for doing that. We should have been allowed to at least recover seven. Did you propose recovery for a period equivalent to the longest period for which they had allowed it? Yes, Your Honor. We raised that issue in our application for rehearing. We raised that issue when we found out that FERC was not going to respect this. I believe we raised it in our initial deficiency response before the application for hearing. We raised it in our brief in this Court. FERC has never responded to the argument at all and has never offered any explanation whatsoever of why it wouldn't at least allow us to recover going back seven years. And we would be happy for a remand for FERC to do that. Let me just sort of look at what the FERC rules perhaps ought to have been. In order to satisfy the matching principle, the idea of the first available rate case has got to be the first case dealing with, as it were, new deferred tax amounts that aren't covered by something else. Is that right? Well, again, I think there's a little bit more slip in the joints in terms of the way FERC has approached it because, as I've just noted, in four cases, FERC recognized the fact that Let's assume those are mistakes. Okay. In terms of a coherent policy, wouldn't it have to insist that if you go for a long time after some new deferred tax amount has come into the picture, you lose it until you either resolve it by settlement or ask for it in a rate filing? Well, I think this gets to the second point I wanted to make in response to Your Honor's question, which is there's also a settlement exception. And in the Commonwealth medicine decision that was issued the same day as our case, FERC said, and this is at page 28 of our brief, it said that a utility could recover previous deferred tax amounts without actually any time limit at all if the utility expressly, quote, reserved in a settlement such issue for future consideration. So, in other words, defer the issue later. And I think that's consistent with the matching concept, because if the parties to the settlement agreement recognize that these amounts are still out there, they're still having to I'm sorry. What case are you relying on? It's the Commonwealth medicine decision. It's cited on page 28 of our brief, Your Honor. It was issued the same day as our case. And it's 164 FERC. 61-172. And I'm referring in particular to paragraph 132 at the very end of the decision and the footnote attached to that paragraph. I'm sorry. I see you have a summary of that case in brackets within one year. Well, that's where we quote it. I mean, it's cited elsewhere in our brief as well. But that's the that's the particular passage I wanted to refer the court to. It's also on pages 30 and 42 of our brief. But what FERC said is that if the public utility had reserved its right to recover these tax amounts through settlement terms, it could come in any time within the next two years and recover those amounts without any time limit whatsoever. And FERC said that that exception didn't apply because it interpreted our 2006 settlement as abandoning the issue or abandoning these costs. But that was erroneous. We satisfied this settlement exception because the settlement agreement, as I discussed at the beginning, made clear these amounts remained on BGE's books but weren't being addressed by the formula rate. They were left in the attic. And all the parties understood that. And they could be dealt with later on. And FERC seems to want some kind of magic words to provide for express reservation other than the fact that tariff sheets made perfectly clear that these amounts were still being recorded but not recovered. But at the time Just to make sure. Your view of a qualifying settlement is one where the parties simply agree to disagree. I think that's FERC's view of a qualifying settlement. Well, it may be. It may be. We'll come to that. FERC will have a chance to speak for itself. And you concede that that does not satisfy the matching principle. Well, I think it satisfies the spirit of the matching principle in the sense that if the parties all agree that we can defer these issues to later on and we don't really know what's in the trunk. We don't know whether the costs are going to favor the utility or favor rate payers, then no one's ox is gored necessarily by the defer of those issues for later on. And when FERC says in the Commonwealth Edison decision that as long as the issue is reserved in a settlement, such issues for future consideration, I think what FERC is saying, we can agree to disagree later on and we don't need to resolve these issues now. And that's exactly what the settlement agreement in 2006 provided when it indicated expressly that these amounts were being recorded but not recovered through the formula rate. And I think it's important to note that no one protested our 2016 filing when we came in to ask for these amounts. And I think that's quite important, because one would think that if indeed we were trying to unravel something that the parties had agreed to or upset expectations that these costs had been abandoned, you would have seen the interveners come in and actually file a protest. But they did not. All they did was file a blank, a blanket sort of plain vanilla intervention and said nothing until FERC essentially dropped a gift into their lap, and now they're here trying to protect that gift. And the other two very quick points I want to make, and then I do want to save a little time for rebuttal, is there's also general FERC precedent that you should never infer from a settlement that a party has waived the right to recover certain costs unless the settlement agreement expressly provides for the waiver. And the rule in this case seems to be the flip of that. But the general FERC precedent that the parties were bargaining against the backdrop of was what I just said. And that's the transcontinental case in our brief that FERC doesn't respond to. And finally, there is a specific regulation on point, 18 CFR 3524C, saying the utility must apply some rate-making method to these costs, and it can't just ignore them. And against the backdrop of that regulation, it seems very, very strange to think the parties expected BGE to do that, but the regulations actually prohibited it from doing. So... I do just have one question, though. I mean, can you provide some explanation of why it did take 12 years? I know on your account that's not so relevant, but why 12 years? I mean, that's a long time. I don't think there's a great explanation of it, other than that I don't think BGE believed that it was under any time limitation, and that the parties had just agreed to defer these amounts until later on, and had seen other people in the industry doing the same thing. And that's what everyone was doing. That's the best I can offer for you. All right. We'll give you some time in response. Thank you very much, Your Honor. Mr. Fish? Good morning, Your Honors. May it please the Court. Jared Fish for the Commission. Judge Williams, you are correct. This case is all about the matching principle. And to align the tax effects of a facility expense with the ratepayers who pay the cost of that facility expense, Order 144 requires utilities to address excesses or deficiencies in their deferred tax accounts sooner rather than later in their next rate case to ensure full tax normalization within a reasonable period of time. That seems to me a coherent view. I'm just not sure that FERC has applied it. It has, Your Honor. Well, what do you say about Commonwealth Edison? It seems to say, as quoted in page 28 of the opening brief, or if the public utility properly preserved its right to recover past taxes through settlement terms. Right, Your Honor. But to determine whether a utility has properly preserved its right, we have to look at what is required to fulfill the settlement exception in Order 144. Indeed. The parties must, quote, reach a settlement on the issue of deferred taxes. The settlement agreement, the 2006 settlement agreement, doesn't even mention deferred taxes. It's only line items in worksheets that acknowledges that those amounts are not included in the rates. But how is that effectively different from an explicit provision, we can't agree on this, but we agree it could all be collected later on after the expiration of this settlement? It's different, Your Honor, because, remember, these settlement agreements are filed with the Commission for its approval. If the settlement agreement includes language that addresses the issue and says, okay, we're not going to address deferred taxes now, we're going to address them in five years, the Commission has an opportunity to pass on that compromise and determine whether it's just and reasonable. Here, the Commission was given no opportunity to do that. Are you saying that these worksheets were not before the Commission? The worksheets were before the Commission, but because Baltimore Gas did not address the deferred taxes in its settlement, the Commission reasonably determined here that it had not satisfied the settlement exception. Any reasonable interpretation of the words, reach a settlement on something, a straight textual analysis, requires the parties to actually wrestle with the issue. And the Commission has said as much. In the Stingray decision, 49 for paragraph 61-240 at 61859, the Commission found that the parties had not reached a settlement on the degree of tax normalization. So Stingray, the utility, came in and said, look, we had a 1985 rate settlement agreement. And we didn't really satisfy Order 144. We only agreed to partial normalization. So now we're coming into 1988, and we want to be able to recover those deficient deferred taxes. And the Commission said, no, because you did not, quote, mention the degree of normalization in your 1985 settlement, you do not fit under the straight-through line from our decision in 1988 to our decision here. Just to be clear, your thought then is, and the Commission's thought expressed through you, is that the settlement exception works where it is only an agreement to disagree, so long as this is made clear at the time the settlement is filed. And you're saying that the settlement filed here did not meet the requisite level of clarity. Correct, Your Honor, but it's a pretty low bar. You just have to mention the degree or how deferred taxes are going to be resolved. There was no mention in the settlement agreement here. And Baltimore Gas argues in its brief that we're announcing a new rule. There's no new rule here that the degree of wrestling with deferred taxes has to be made explicitly. Explicitly is a word that Baltimore Gas used in its own, in its own hearing request, where they argued that because they had explicitly excluded deferred taxes in their 2005 agreement, that they had necessarily deferred the issue. All FERC was doing in saying that there was no explicit deferral was a response to Baltimore Gas, its own argument. But the holding in paragraph 17 of the procuring order, and that's at JA210, paragraph 17 in note 41, the Commission did a straight textual analysis and found that because the settlement was, quote, silent on this point, that it had not fulfilled the settlement exception, which requires actually addressing it. And again, that gives the, that gives the Commission an opportunity to pass on the compromise agreed to in the settlement and determine if it results in just and reasonable rates. Can you explain, though, why the mention of these, of these lines on the worksheets is not at least reserving those questions? I mean, so the Commission may later have the ability to approve, you know, the amount or how it works, but, I mean, but why is it not explicitly reserved here on these worksheets? Well, remember, Your Honor, we have to come back to the text and intent of the governing regulation, Order 144, which, as Judge Williams pointed out, is all about the matching principle. And so if a utility could simply exclude an amount from its rates and say, we're going to revisit this at some point in the future, it could be seven years, it could be 12 years, it could be 25 years, we're not going to tell you, then we're undermining the entire thrust of Order 144. And again, you know, it's a matter of, it's a matter of, you know, that's just, that's not just me saying it. This Court has said it, and it's a public systems decision in 1983. So what does the Commission, what does the Commission believe it means when you have these line items that say less FAS 190 above, if not separately removed? I mean, what does that, what does that mean? The Commission acknowledges that it means that those, those amounts were not included in the rates in the settlement. But just because a utility is noncompliant with the regulation, doesn't somehow ratify its coming in 12 years later and seeking to retrospectively recover those deferred amounts in violation of the matching principle in violation of Order 144. I see I'm over my time. Could you address the 12 years, 7 years, 5 years conundrum? Yes, Your Honor. First of all, the Court doesn't have to enter that fray. The Commission's discussion of 12 years, 7 years, 5 years was in response to Baltimore Gas saying, look, there are these other cases where the Commission has blessed retrospective recovery, you know, 5 years, 7 years, 12 years. And the Commission said, look, you should have addressed these deferred taxes in your quote next fray case, which was in 2005. And at any rate, waiting 12 years certainly wasn't a reasonable period of time to do so. Was that difference between 7 and 12? Well, again, that's not, that's not the Commission's, that's not the basis for its holding here, the time difference. The next fray case requirement is what controls. But the Commission was simply saying, moreover, you waited, you know, you waited longer. So under no formulation was this a reasonable period of time. So are you saying that the case is short of 12 years to be distinguished from this on grounds other than time period? The ITC decision can. That's the one published decision cited because there ITC sought recovery of deferred taxes in its next fray case after the triggering event, a tax rate change in 2011. The other delegated letter orders are not precedent on this issue, and here's why. This case is just like San Diego Gas and Electric for two reasons. There, as in here, the cases that are cited as precedent did not actually decide the issue and dispute here, and that issue was not squarely presented to the court. And that was enough for San Diego Gas to say prior Commission orders, which by the way, there they were fully published orders, did not set precedent on the issue and dispute there. That was about financial incentives. I have to say you're invoking non-precedential orders bothers the judicial mind. Makes it sound as if by declaring something non-precedential, you can flip back and forth as you like. But you're arguing, I take it, that in those cases, the issue presented by BGE's position here was not presented. It wasn't, Your Honor. The only issue that was presented in those cases was whether allowing recovery of these deficient deferred tax accounts would zero out the balance sheet in those deferred tax accounts. Was what? Was whether it would zero out the balance sheet in those deferred tax accounts. And sure, it definitely would. But what the Commission didn't consider and what was not squarely presented was the timing issue. Again, it all comes back to the matching principle, whether the utility did it in time. By analogy, if a taxpayer fails to file taxes in year one, and then 12 years later goes to the IRS and says, oh, I'm filing my tax return now. I'm entitled to the refund I should have received had I timely filed. Well, sure, as Baltimore Gas argues, they were required to file that tax return. But timeliness matters. Chances are you're not going to get the refund. You might actually get a penalty or even worse. Timeliness matters, and that's baked into the text and intent of Order 144 here. Baltimore Gas is seeking retrospective recovery. It shifts the burden of paying for facility expenses to future rate payers and subsidizes rate payers from 2005 to 2017 in violation of the order. Thank you, members. Good morning, Your Honors. May it please the Court. My name is Steve Pearson, and I'm appearing today on behalf of the Maryland Office of People's Counsel. By statute, Maryland has designated the office to represent the interests of residential rate payers in Maryland. The office supports first decision in this case, because as counsel just said, it's a matter of the law. This decision protects future rate payers from paying costs that, if they are in fact recoverable, should have been recovered from rate payers historically, from 2005 to 2017. We urge the Court to affirm the commission's decision for that reason. To do anything otherwise would open the door to allow an intergenerational subsidy by future rate payers to pay for the facility. And that intergenerational subsidy would be created strictly from the inaction of Baltimore Gas and Electric. The door is open on the assumption that it wasn't opened earlier by one or more of those four first decisions.  And I think you have to address each case on its facts, and each case individually. And in this case, we have a 12-year gap. We don't need to decide whether 10 years is good or bad, five years is good or bad. Yeah, I mean, it's an enormous hole in the matching principle to say it can go seven years, if that is what the first decisions add up to. It shows a lack of attention to the matching principle. It does in those prior cases, and we can't do anything about those prior cases in this case. What we have here is a 12-year delay by Baltimore Gas. And as a legal matter, the matching principle prevents the company from seeking recovery of those costs now, because it's the basic principle of rate-making that the cost-causer should be the cost-payer. Future ratepayers did not cause those costs from 2005 through 2017. Future ratepayers are the causers of certain costs. They will bear those costs, but they should not also bear those historic costs. And with that, I assume our time is up. And if the Court has no further questions for me, we ask the Court to affirm the Commission's decision. Thank you. Thank you, Your Honor. I would like to make just a few quick points to rebuttal. The first has to do with the settlement exception, and I think what FERC is really asking for is a kind of magic words requirement. It claims the settlement was not silent or was silent on this issue, but the settlement was not silent, in the sense that, again, the worksheets that were attached to the settlement and submitted to the Commission for approval expressly excluded these amounts, and the testimony that was submitted to the Commission in accompanying the initial filing explained that these amounts were not being — were still on the books, but were not being recovered through the formula rate. So I think that the settlement was expressed that we intended to defer this issue for later, and that matched what everyone in the industry was doing. And I haven't heard an answer from FERC about how it could understand BGE's intent as one of abandonment when everyone in the industry — I mean, utilities don't just willy-nilly abandon costs that they might want to recover. Everyone in the industry was doing the same thing, and it resulted from confusion about what the rules were when he transitioned from stated rates to formula rates. That turns on the four cases, which FERC argues essentially did not turn on the sort of claim that you're invoking. Well, let me address that, Your Honor. That's not true. The only issue in those four cases was whether companies could recover these catch-up amounts that had built up in between the formula rate and the filing to recover these catch-up amounts. That was the sole issue in the case. So the idea that it didn't come up, that was what the case was about, and FERC allowed it. And FERC here has offered no rationale whatsoever for distinguishing or explaining these prior cases. It disavowed the length of time as the relevant distinction in its argument. And we think that's very significant, because all it's doing is essentially saying, well, they were delegated, so we can ignore them. But the APA requires more. And when the entire industry is engaged in a set of practices that FERC over time approves repeatedly, it is arbitrary and capricious for FERC now all of a sudden to essentially single us out and deny us the same recovery that it's given to everyone else. And I see my time has expired, but we ask the Court reverse. Thank you. Thank you.
judges: Henderson, Rao, Williams